Kuehn vs. The City of Milwaukee.

─────

KUEHN, Appellant. vs. THE CITY OF MILWAUKEE, imp., Respondent.

*November 17 — December 6, 1892.*

*Injuries to fishery: Public nuisance: Injunction: Parties.*

1. The dumping of garbage by a city into waters which are a common fishery, and the consequent destruction of the fishing industry in a certain locality, will not be restrained at the suit of a private individual who has no special privilege or right to fish in that locality.
2. Damage to the nets of the plaintiff and the killing of fish therein on a single occasion by the dumping of the garbage, no danger of a repetition of injuries of the same character by like means being shown, will not support the action for an injunction.

APPEAL from the Circuit Court for *Milwaukee* County. This is an action in equity, brought by the plaintiff against the city of *Milwaukee* and one Richardson to restrain them from depositing in Lake Michigan the garbage collected in said city. Richardson was the contractor with

83          583
s18 LRA   553
29 LRA 700n
33 LRA 542n
54 LRA 178n

83          583
60 LRA 513n
60 LRA 525n

Kuehn vs. The City of Milwaukee.

the city to deposit such garbage in the lake. He made no answer to the complaint, and no further reference need be made to him.

It is alleged in the complaint and certain affidavits presented by the plaintiff that plaintiff is, and for thirty years and more last past has been, a resident and taxpayer in the city of *Milwaukee*, and during all that time has pursued the avocation of a fisherman, occupying as his fishing grounds "a place about twenty or more miles square, situated east of the central part of the shore line of the city of *Milwaukee*." That on or about December 30, 1891, he located and placed his nets, as he was accustomed to do, "in the waters of Lake Michigan, at the point aforesaid," and the same remained there until January 5, 1892. The nets were located about ten miles from the shore. That at and before the above dates the city collected garbage accumulating therein, and dumped it into the lake near where the plaintiff's nets were located, and such garbage was driven by the winds and waves into and upon such nets, and greatly damaged the same, killing the fish that had been caught therein. And, further, that the depositing of such garbage in the lake drove the fish from such fishing grounds, and destroyed the plaintiff's business, as well as that of all others engaged there in fishing. The complaint contains many averments showing that the dumping of such garbage in the lake created a public nuisance.

The answer of the city admits the dumping of the garbage in the lake, but alleges that it was only a temporary expedient to get rid of it until some better plan could be adopted and put in operation. It satisfactorily appears that, just before the plaintiff's nets were thus injured, the persons in charge of the city garbage boat were compelled by stress of weather to empty one boat load of garbage more directly east of the city, and nearer the shore, than usual, and in the neighborhood of plaintiff's nets.

Kuehn vs. The City of Milwaukee.

On the complaint and certain affidavits the plaintiff moved for a temporary injunction as prayed in the complaint. The answer of the city and several affidavits were read in opposition to the motion. For reasons stated in a written opinion on file, the circuit court denied the motion. In that opinion, after stating the facts, and holding that the dumping of the city garbage in the lake created a public nuisance of a most grievous character, the court proceeded to give the reasons for denying the motion, as follows: " But has the plaintiff shown himself entitled to have this nuisance abated at his instance? It is not necessary to go beyond this state for instruction upon this point. Our own supreme court have settled the law as to the cases in which a private citizen may sue to restrain a public nuisance, and in which he may not, with as much certainty as any court in the country. The plaintiff in such case must show not only that he is affected by the public nuisance, in common with the other citizens of the state or of the neighborhood. He must show, beyond that, that he is affected in some way different from other citizens, and the difference must be a difference in kind, and not a difference in degree; that is to say, his injury must differ from the injury generally suffered, not only as to the amount of injury, but as to the kind of injury, suffered. The plaintiff in this case shows that he is one of a large number of fishermen affected by this alleged nuisance, and it is abundantly clear that he has no special privilege or right to fish in Lake Michigan; that every other man who is so disposed may become a fisherman in the same lake, and in the same parts of the lake, where he plies his vocation. Furthermore, he shows that a very considerable number of men are so engaged. In what respect does his injury differ from that of the general public? He has no special interest, which others have not, affected by this nuisance. He has no property, which others have not, damaged by this nuisance. He sets up no riparian rights as

an owner of a portion of the shore; and, in short, he shows no special injury to himself or to his business which is not common to all the fishermen engaged in fishing along the west shore of Lake Michigan and in the neighborhood of the city of *Milwaukee.* It has been held that a party having the right to travel along the highway, the same having been obstructed, can bring no suit to abate or restrain that nuisance unless he is thereby prevented from having access to and from his own premises situated along that highway. No matter how much he may be under the necessity of traveling the highway, still he cannot bring this action unless he has occasion to use the highway in a way that others have no occasion, namely, in getting to and from his own premises. So, too, people affected by the pollution of the waters of the river can none of them bring a suit of this nature, unless it be one whose land or whose permanent business is located along the bank of the river, and is thus injured in a manner not common to the whole public. To be brief, however glad I would be to restrain the continuance of this great nuisance, which is already dangerous, and threatens to become intolerable, and however much I may sympathize with the solicitude of the general public to get rid of it, I must hold that this plaintiff has not shown himself qualified to prosecute this action, and must therefore refuse the injunction prayed for."

The plaintiff appeals from the order denying such temporary injunction.

*Geo. E. Sutherland,* for the appellant, contended, *inter alia,* that by his occupancy of certain fishing grounds plaintiff came to possess rights which others did not possess. He acquired a qualified property in the thing occupied (2 Kent, Comm. 347), and the destruction of his occupancy was a special damage. The least injury to an individual, such as an expense of time or money or labor, entitles the plaintiff to maintain the action. *Rose v. Miles,* 4

Maule & S. 101; *Mills v. Hall*, 9 Wend. 315; Gould, Waters, sec. 544; *Hudson R. R. Co. v. Loeb*, 7 Robt. 423–424; *Knox v. Mayor*, 55 Barb. 405. Every individual who receives actual damage from a nuisance, may maintain a private suit for his own injury, although there may be many others in the same situation. *Lansing v. Smith*, 4 Wend. 25; *First Baptist Church v. S. & T. R. Co.* 5 Barb. 84; *Pierce v. Dart*, 7 Cow. 609; *Stetson v. Faxon*, 19 Pick. 147; *Hughes v. Heiser*, 1 Bin. 463; *Walker v. Shepardson*, 2 Wis. 384; *Barnes v. Racine*, 4 id. 454; *Greene v. Nunnemacher*, 36 id. 50; *Pennoyer v. Allen*, 56 id. 502; *Williams v. Smith*, 22 id. 594; *Mayor v. Baumberger*, 7 Robt. 219. As to the question of rights acquired by the temporary occupancy of public waters, see *Spokane Mill Co. v. Post*, 50 Fed. Rep. 429; *Lincoln v. Davis*, 53 Mich. 375; *People's I. Co. v. Steamer Excelsior*, 44 Mich. 229; *Woodman v. Pitman*, 79 Me. 456; *Hickey v. Hazard*, 3 Mo. App. 480; *Wood v. Fowler*, 26 Kan. 682; *Brown v. Cunningham*, 82 Iowa, 512. An injunction is the proper remedy to restrain the corruption of waters. Gould, Waters (2d ed.), secs. 121, 545, 546; Wood, Nuisances, sec. 777; *Oldaker v. Hunt*, 31 Eng. L. & Eq. 503; *Haskell v. New Bedford*, 108 Mass. 208; *Brayton v. Fall River*, 113 id. 218; *Boston R. M. v. Cambridge*, 117 id. 396; *Seaman v. Lee*, 10 Hun, 607; *Pettigrew v. Evansville*, 25 Wis. 223. The injunction will be granted to prevent the corruption of water causing any injury to the plaintiff in any rightful use of the water, as by rendering it unfit for fish to live in; and the same rule holds whether the waters are navigable or unnavigable. Gould, Waters, sec. 544; *Att'y Gen. v. Kingston*, 34 L. J. Ch. 481; *Cobb v. Bennett*, 75 Pa. St. 326. This court has practically decided the principle contended for. *Enos v. Hamilton*, 27 Wis. 256; *A. C. Conn Co. v. Little S. L. & M. Co.* 55 id. 580.

For the respondent there was a brief by *Conrad Krez*, city attorney, and *V. W. Seely*, assistant city attorney, and

the cause was argued orally by *Mr. Krez.* They argued, among other things, that the right to fish in Lake Michigan is a right common to all, and the plaintiff has no further or greater right in this regard than any or all of the citizens of *Milwaukee. Sloan v. Biemiller,* 34 Ohio St. 492; *Lincoln v. Davis,* 53 Mich. 375. Before an injunction can be sustained in behalf of the plaintiff, he must show a special injury to himself different in degree and kind from that suffered in common by the public, and peculiar to himself. This he has not done. 1 High, Inj. sec. 762; *Houck v. Wachter,* 34 Md. 265; *Greene v. Nunnemacher,* 36 Wis. 50–55; *Enos v. Hamilton,* 27 id. 256; *Clark v. C. & N. W. R. Co.* 70 id. 593; *Barnes v. Racine,* 4 id. 454; *O'Brien v. N. & W. R. Co.* 17 Conn. 372; *Zettel v. West Bend,* 79 Wis. 316.

LYON, C. J. We think the motion for a temporary injunction was properly denied, for the reasons stated in the above extract from the opinion of the learned circuit judge. Those reasons are so clearly and accurately stated therein that but little need be added.

Any citizen of the state has a lawful right, in common with all other citizens, to fish in the waters of Lake Michigan. Because the right is common to the whole public, such waters are a common fishery. *Wright v. Mulvaney,* 78 Wis. 89. Any act which interferes with the enjoyment of that right in any particular locality may be a nuisance; but, if it affects all alike who fish in that locality, it is a public, and not a private, nuisance, and no private individual can maintain an action in equity to enjoin its continuance. This is elementary law, recognized and enforced by all courts. It is repeatedly asserted in the numerous cases cited by the learned counsel for plaintiff in support of his claim that an injunction ought to issue in this case.

The injury here complained of is the damage to the nets of plaintiff, and the killing of the fish which had been

caught therein, on the single occasion mentioned in the complaint, and the destruction of the fishing business in that locality. There is no averment that the plaintiff ever before placed his nets where he placed them on December 30, 1891, or that he ever intended to locate them again in that precise place, or that his nets had been thus damaged or fish therein killed at any other time, or that there was any danger of a repetition of injuries of the same character by like means. So far, then, as injury to such property is concerned, whatever remedy at law the plaintiff may have to recover damages therefor, it is clear he has none in equity.

Neither has he any such right to any specific portion of the lake as will support his action for an injunction. The field of his operations contained 400 square miles or more; and there is nothing in the motion papers to show that he acquired, by occupancy or otherwise, or ever attempted to so acquire, any rights in any particular portion of such field which did not belong equally to every other citizen who, finding the particular place vacant, chose to locate his nets there.

The only other injury of which the plaintiff complains is the destruction of the fishing industry in such twenty miles square of Lake Michigan. It is obvious that such alleged injury is common to every person engaged in fishing in that territory. The case shows that there are many such persons.

Many of the cases cited by counsel for plaintiff have been examined. It is believed that none of them conflict with the views herein expressed. They relate to the interruption of the use of navigable streams for the transportation of private property; to conflicting claims to ice formed in such streams; and to conflicting questions of riparian rights; and nearly all of them are actions at law for damages. As already observed, we find nothing in any

of them in conflict with the rules of law above indicated, which controlled the decision of the circuit court. Such decision is the more satisfactory in view of the fact that the city has ceased entirely to dump its garbage into the lake, and has made other and permanent arrangements for the disposition of it. At least, it was so stated in the argument, and not denied.

*By the Court.*— The order of the circuit court denying the injunction is affirmed.